**Lee E. GOODWIN**

v.

**Anthony CELEBREZZE, Secretary of Health, Education and Welfare of the United States.**

**Civ. A. No. 8960.**

United States District Court
W. D. Louisiana,
Shreveport Division.

March 30, 1965.

Cecil P. Campbell, Campbell, Campbell & Marvin, Minden, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., and Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

Pursuant to 42 U.S.C.A. § 405(g) this action is brought to obtain review and reversal of defendant's final decision denying claimant's application for Social Security disability benefits and establishment of a period of disability. After cross motions for summary judgment were filed, the case was submitted for decision on the administrative record.

Goodwin filed an application for disability benefits and to establish a period of disability January 5, 1961. His claim was denied by the Hearing Examiner and his request for review was denied by the Appeals Council. He then sought review in this Court. By an opinion rendered June 10, 1963, we reversed the decision of the Secretary and remanded the matter for the taking of additional evidence and findings as to claimant's work capabilities and opportunities, if any. In concluding that opinion we said, "If none can be developed beyond what is disclosed by this record, then in the name of humanity and in the spirit in which Congress intended this legislation to apply, his claim should be honored."

A second hearing was held October 17, 1963, and additional testimony and documentary evidence were received. Again Goodwin's claim was denied by the Hearing Examiner, but the Appeals Council, being of the opinion that certain findings of the Examiner were not supported fully by the record, remanded the case for further proceedings.

Another hearing was held for taking additional evidence February 27, 1964, after which the Hearing Examiner again recommended that Goodwin's claim be denied. This decision was made final by order of the Appeals Council June 22, 1964. It is from that final decision that this review is sought.

By the terms of 42 U.S.C.A. §§ 416(i) and 423, in order for claimant to prevail the evidence must show that he met the statutory test of disability on April 5, 1961, for a period of disability and on April 1, 1961, for disability insurance benefits. "Disability" under the Act means "inability to engage in any *substantial* gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." (Emphasis added.) 42 U.S.C.A. §§ 416(i) (1), 423 (c) (2).

Claimant is a 54-year-old white male who dropped out of school at the age of 16 while in the third grade. He cannot read and can write only his name. His work experience includes that as a farmer, school bus driver, sheet metal worker, truck driver and roughneck in the oil fields for 13 years. He is of low mentality and knows no other kind of work than manual labor, but the medical reports almost unanimously conclude that he is unable to work at manual labor and probably will never be able to do so. He was injured in December, 1959, when he suffered a fall while working as a roughneck on an oil rig. He has not been able to work since that time.

The medical evidence shows that claimant suffered a ruptured intervertebral disc from his fall which had not healed sufficiently by April, 1961, for him to return to work. At that time he also suffered from hypertension, and the evidence shows that he has been partially deaf in one ear for many years. Taken as a whole, the medical evidence shows beyond question that claimant's physical and mental condition has deteriorated steadily since the time of his injury. For several years he has had glaucoma in his right eye, which has resulted in loss of almost all of the sight in that eye. He also has glaucoma in his left eye, but his vision in that eye has not suffered to date. He also suffers from frequent headaches and occasional blacking out spells.

Tests by one psychologist who examined claimant showed him to have a full scale IQ of 59. Another psychologist reported that Goodwin had an IQ of 69 and that he had a mental age of 10 years and 7 months. Not only does Goodwin have low mentality, but his emotional state is one of depression over his inability to work. His physical, mental and emotional state shows that he is completely incapable of being trained for any other kind of work.

We have no doubt that claimant suffers now, and that he suffered in April, 1961, from a medically determinable physical or mental impairment which will be of indefinite duration, as required by the Act. 42 U.S.C.A. §§ 416(i) (1), 423(c) (2). However, the principal issue in this case is whether this physical and mental impairment renders him unable "to engage in any *substantial* gainful activity." It was for this reason that we remanded the case in our prior decision.

The criteria for determining whether a claimant is able to engage in substantial gainful activity were set out in Hayes v. Celebrezze, 311 F.2d 648 (5 Cir. 1962):

"The legal standards are now well outlined. For this sort of situation, they have been epitomized by the dual question (1) what can appellant do? and (2) what employment opportunities are available to a man who can only do what the Claimant can do. And in finding the answer 'mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' Stringent as is the statutory standard of disability, it is to be administered with reason. Were it otherwise few would ever be able to qualify. This was pointed out by Judge Rives in a decision which we have many times approved. 'No matter how infirm, or disabled, or sick a man is; if he still possesses some of his faculties in some degree of mobility, he is not in the strictest sense unable to perform *"any* substantial gainful activity." ' For like reason once the Claimant makes a substantial showing, the burden resting generally on the Claimant to make out a claim is not to be carried to the logical extreme of forcing him to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations." (311 F.2d at 654.)

In testing the capacity of a claimant to work we must consider his age, training, work experience and physical and mental faculties. Hicks v. Flemming, 302 F.2d 470 (5 Cir. 1962); Flemming v. Booker, 283 F.2d 321 (5 Cir. 1960). It is not enough to show a mere theoretical ability to engage in substantial gainful activity. It must be shown that there is a reasonable opportunity for him to engage in such activity. Celebrezze v. Warren, 339 F.2d 833 (10 Cir. 1964); Janek v. Celebrezze, 336 F.2d 828 (3 Cir. 1964); Kerner v. Flemming, 283 F.2d 916 (2 Cir. 1960).

Although the burden is on claimant to show that he is unable to engage in substantial gainful employment, it is not necessary that he use a catalog of the nation's industrial occupations and go down the list and negative his capacity

for them or their availability to him as employment opportunities. Celebrezze v. Warren, supra; Butler v. Flemming, 288 F.2d 591 (5 Cir. 1961); Ferran v. Flemming, 293 F.2d 568 (5 Cir. 1961).

The reports of two psychologists submitted after we remanded the case for additional evidence agree with the report of a psychiatrist previously submitted that claimant is completely unemployable in his present state. These opinions were based on claimant's physical as well as his mental state. We note that, while claimant's back condition may have improved slightly since 1961, his mental state has deteriorated so that his present ability to work is approximately equal to his overall ability to engage in substantial gainful employment in April, 1961.

The testimony of Mr. Riser, who has been a vocational rehabilitation counselor for the State of Louisiana for 17 years, shows that claimant first was referred to him in 1960. Mr. Riser concluded that claimant could not be rehabilitated because of his severe disability, lack of education and emotional state. He stated that there were no jobs in claimant's area in which claimant could be placed. One reason given for this was the fact that many employers would not hire claimant because of his uninsurability.

Claimant lives in Minden, Louisiana, approximately 30 miles from Shreveport. Mr. Riser stated that there might be a few jobs in Shreveport which claimant could do, but that such jobs were low paying ($100 per month) and that he could not recommend that claimant move his home for a job paying so little. We agree with that conclusion and also think it would not be reasonable to require claimant to commute daily for such meager wages. Mr. Riser also stated that there were no jobs available in the Minden area which could be performed by claimant.

The Hearing Examiner and the Appeals Council relied heavily on the testimony of Dr. Thompson, a psychologist in private practice, who was presented as a vocational consultant. He testified that he has been in practice in Shreveport for three years and that in his opinion within a 50 mile radius of Minden there are jobs available which could be performed by claimant. This area includes Shreveport, a city of more than 150,000 population. These jobs include those such as a bottle washer by hand or machine, park cleaner, clean-up man at an outdoor theater or hamburger stand, nut and bolt sorter, news inserter for a newspaper, parking lot attendant, box repairer for a bottling company and hand or machine labeler.

Dr. Thompson stated that these jobs reasonably were available within claimant's geographical area, but he did not know of any particular openings in any of these jobs. He admitted that not many, if any, of these jobs were available in Minden and that all of the jobs would bring low wages. He also stated that he could not say that any employer would hire claimant in any of these jobs, because that depended on the individual employer.

When asked where he discovered all these available jobs, Dr. Thompson stated that he used several volumes of a Dictionary of Occupational Titles. In this regard we are reminded that, as set forth above, many times the courts have stated that it is not necessary for a claimant to use a catalog of the nation's industrial occupations and negative his capacity for each one. See Celebrezze v. Warren, supra; Butler v. Flemming, supra; Ferran v. Flemming, supra.

Mr. Riser, who has had more experience in claimant's area, stated that he had never been successful in placing anyone in any of the jobs suggested by Dr. Thompson. He also stated that claimant *could not* be placed in any of these jobs.

█ While we are aware that the findings of the Hearing Examiner are final if they are supported by *substantial* evidence (42 U.S.C.A. § 405(g)), we are of the opinion that Dr. Thompson's testimony revealed merely a *theoretical* availability of jobs in claimant's area. Before a claim can be denied it must appear that the claimant could do work of

a substantial gainful nature—actually, not just apparently. Ratliff v. Celebrezze, 338 F.2d 978 (6 Cir. 1964).

If we were presented with nothing more than a question of whether to believe the testimony of Mr. Riser or that of Dr. Thompson, we would be compelled to accept the Hearing Examiner's decision to believe Dr. Thompson. However, that question would arise only if it could be said that Dr. Thompson's testimony met the legal standard of showing that substantial gainful employment was *reasonably* available to claimant. See Hayes v. Celebrezze, supra.

While Dr. Thompson testified to a theoretical availability of jobs for claimant, we do not think his testimony showed that these jobs *reasonably* were available. Therefore, his testimony does not meet the "substantial evidence" test upon which the Hearing Examiner could have based a proper decision. In reaching this conclusion we have considered not only claimant's physical, mental, emotional and educational limitations but also the fact that most, if not all, of the jobs mentioned as possible employment for him are in the Shreveport area. We do not think it is reasonable to expect a man in claimant's condition either to move his family to Shreveport or to commute daily in order to secure any of these admittedly low paying jobs. Either of these choices would prevent the employment from being "gainful" to claimant.

For these reasons we find that the record contains *no substantial evidence* to support the Secretary's denial of disability benefits to claimant. Moreover, we think it clearly shows that claimant was disabled within the meaning of the Act in April, 1961, and that he is disabled at the present time. Therefore, the decision of the Secretary is reversed, and claimant's motion for summary judgment is granted. The case is remanded to the Secretary with directions to grant Goodwin's claim for disability benefits and for the establishment of a period of disability as claimed.

In so ruling, we are not unmindful of the holding in Celebrezze v. O'Brient, 5 Cir., 1963, 323 F.2d 989, but believe that case to be clearly distinguishable on its facts from this one, particularly in that there the claimant had a high school education and clearly was qualified to perform available work requiring only mental exertion. Moreover, it was shown that the Mississippi Division of Vocational Rehabilitation had found that O'Brient was not disabled by his physical impairment and he could "continue to work as a supervisor." On the basis of such substantial evidence the Examiner properly found that the claimant " * * thanks to [his] high school education, manual skills, and previous experience * * * was capable of being retrained with little difficulty [and of] earning a substantial living * * *" etc. That is a far different case than this one, and not binding upon us here.