Adam KNELLY, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare, United
States of America, Defendant.

Civ. No. 8595.

United States District Court
M. D. Pennsylvania.

Dec. 30, 1965.

As Amended Jan. 24, 1966.

522

J. J. McCluskey, Hazleton, Pa., for plaintiff.

Bernard J. Brown, U. S. Atty., Julius Altman, Asst. U. S. Atty., Scranton, Pa., for defendant.

SHERIDAN, Chief Judge.

This is a motion by the Secretary of Health, Education and Welfare for summary judgment in an action brought by plaintiff, Adam Knelly, under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g) to review a final decision of the Secretary that plaintiff is not entitled to disability insurance benefits and the establishment of a period of disability by reason of a disability as defined in 42 U.S.C.A. §§ 416(i) and 423.

The question before this court is whether there is substantial evidence to support the Secretary's finding that plaintiff has not established his inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration. 42 U.S.C.A. §§ 405(g), 416(i) and 423.

Plaintiff filed his application on April 16, 1963. Plaintiff last met the earnings requirements on December 31, 1962. The evidence must establish that the claimant was under the required disability beginning on or before December 31, 1962, to qualify for disability insurance benefits and for the establishment of a period of disability.

The burden is on the plaintiff to prove a disability as defined by the Act. 42 U.S.C.A. §§ 416(i) and 423(c). The Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive if they are supported by substantial evidence. Ferenz v. Folsom, 3

Cir. 1956, 237 F.2d 46; 42 U.S.C.A. § 405(g). Substantial evidence has been defined as that which is more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict, when the conclusion sought to be drawn from it is one of fact for the jury. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Consolidated Edison Co. of New York v. National Labor Relations Board, 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660; Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456. The determination of substantial evidence is to be made on a case-to-case basis. Celebrezze v. Wifstad, 8 Cir. 1963, 314 F.2d 208.

██ A two-part test has been established to determine the existence of the required disability: (1) what is the extent, if any, of the claimant's physical or mental impairment, and (2) does the impairment result in his inability to engage in any substantial gainful activity? Klimaszewski v. Flemming, E.D.Pa.1959, 176 F.Supp. 927.

The plaintiff's principal complaint is anthracosilicosis and related respiratory impairments. The record also suggests angina pectoris.

The hearing examiner made no specific findings on the extent of anthracosilicosis. Thus, he concluded:

" * * * From the weight of the acceptable and credible medical evidence of record it is found that the claimant was not so impaired and that the claimant as of December 31, 1962, had a residual physical capacity which, considered, in connection with his age, education and experience, is determined to be adequate to enable him to discharge the job requirements of the numerous jobs listed by Dr. Granick. * * *

"After consideration of the entire record, including the testimony at both hearings, both medical and non-medical, the Hearing Examiner finds that the claimant has not sustained his burden of proof of establishing that he has been continually unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments of the level of severity contemplated by the Act at any time on or before December 31, 1962, the terminal date to which the claimant was insured for such benefits under the Social Security Act. The Hearing Examiner finds on the basis of the substantial preponderance of the credible evidence that the claimant is not so disabled."

The Appeals Council of the Social Security Administration adopted the hearing examiner's decision, but added:

"The evidence establishes that the claimant has anthracosilicosis; however, this condition, along with such other respiratory impairment as may be present, has caused only a moderate decrease in pulmonary function;".

The examiner relied heavily on the interpretative opinions of Dr. Blum. He testified that the opinions in medical reports of Dr. Drogowski, plaintiff's physician, which were substantially reiterated in Dr. Drogowski's testimony, lacked graphic description and were not supported by tests. He also reviewed certain x-ray and medical reports by Drs. Corazza [1] and Auerbach [2], referred to by the hear-

1. Dr. Corazza, on the basis of May and July 1963, examinations, concluded that ventilatory studies were not impressive and that arterial oxygen saturation studies were normal.

2. Dr. Auerbach, as a result of a July 1963, examination, concluded that the objective physical findings were minimal, consistent with Dr. Corazza's ventilatory findings, but that the respiratory rate on exercise tolerance was abnormal.

ing examiner as impartial experts, whose reports contained the results of examinations and tests, and other supporting data. On the basis of the medical evidence, Dr. Blum concluded:

" * * * [F]rom all of these bits of testimony, I find that there is a clear cut diagnosis of second stage anthracosilicosis, with the patient's complaint that he coughs and becomes dyspneic on exertion, but findings of a patient who is comfortable at rest does not show evidence of disease in an objective sense except by x-ray and who may perhaps react poorly to a test of his exercise capacity, but in other respects does not react poorly. Those are the findings. * * * I think it is definite that this man has the capacity to carry on in activities which do not require much physical exertion. He is capable of doing anything of a sedentary nature, of working with his hands in activities which are usually done by sedentary, and that he is capable of walking, of moving about, of, for instance, going about by public conveyance. He is capable of climbing up and down steps, perhaps at a slow pace, and he is not disabled by disease in the sense of being actively sick as recorded by any of these examinations. We heard discussion of cough here. I saw nothing in these examinations to indicate that he is disabled by constant or seriously productive cough or by complications of coughing during a day's activity. The testimony leaves open an undecided question of just how much exertion is he capable of doing because I don't feel that we have a clear description of a good exercise tolerance test."

While Dr. Blum appears to believe that the medical data is incomplete in that it does not permit a determination of those activities other than sedentary activities which can be performed by plaintiff, he does find that the medical data supports the fact that at least plaintiff can move about, travel and perform sedentary work.

Since this is in line with the Secretary's determination, the incompleteness of the record does not affect the finding.

The record also supports the conclusion reached on angina pectoris. Dr. Blum testified that the medical data, except that of Dr. Drogowski's, do not indicate, much less support, a diagnosis of angina pectoris. In commenting on Dr. Drogowski's report of April 16, 1964, where the condition was first noted, he said there was no mention of pain or tests on which to base a diagnosis. Moreover, Dr. Drogowski said this condition had its onset on November 15, 1963.

The evidence relied on to support the second part of the test is more troublesome. The plaintiff is 49 years old. At the age of 14 he completed the seventh grade of elementary school. His entire work career has been in laboring-type occupations. In 1936 he began to work in the coal mines, coupling and uncoupling mine cars to a mine motor. He was a miner from 1942 until 1959. From 1959 to 1960 he was a repairman in a mine breaker and then was furloughed due to a mine shutdown. In 1962 he worked for short periods digging ditches for a plumber and cutting lawns and painting schools for the township school district. The Social Security Administration recognizes that plaintiff cannot engage in strenuous activities; in fact, it recognizes that he is limited to sedentary activities. It does not dispute that he is unable to work as a miner or to perform the type of sporadic and temporary employment he did in 1962. Cf. Dupkunis v. Celebrezze, 3 Cir. 1963, 323 F.2d 380. It is quite enough if plaintiff offers evidence of a serious impairment, his work experience, his inability to do that kind of work any longer, and his lack of particular experience for any other type of job. Once this has been shown, if there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type work, actually, not apparently. Jarvis v. Ribicoff, 6 Cir. 1963, 312 F.2d 707;

Thompson v. Celebrezze, 6 Cir. 1964, 334 F.2d 412.

The defendant attempted to meet this burden through the testimony of Dr. Granick, a vocational consultant. Dr. Granick testified that he reviewed all the medical evidence, listened to the additional medical evidence at the hearing, and that such testimony was understood by him. He concluded that prior to December 31, 1962, plaintiff, with his educational, vocational and employment background, "was capable of performing some kind of gainful employment." He added that he "took pains to select jobs all sedentary in nature," and that they are jobs which plaintiff could perform with little instruction. He indicated that plaintiff could do light work of a select nature.

■ In reaching these conclusions, he made use of (1) the Dictionary of Occupation Titles, a standardized reference book for job descriptions throughout the country; (2) two additional volumes which either supplement the above dictionary or list all occupations by number so they can be located if only the number or the general area where the job exists is known; (3) an Entry Occupational Classification booklet; (4) occupations in Pennsylvania and the Wilkes-Barre/Hazleton area as disclosed by the 1960 census; (5) literature published by the Wilkes-Barre Chamber of Commerce on industrial opportunities; (6) local newspapers for the purpose of acquainting himself with the changing industrial employment situation in the area; (7) the Pennsylvania employment office newsletter on employment in the Wilkes-Barre/Hazleton area; and (8) Worker Trait Requirements for 4,000 jobs. He submitted a list of sedentary jobs such as cloth bag tier, lens examiner, buckle looper, etc., which he believed plaintiff could perform. He testified, however, that while these jobs exist in the Wilkes-Barre/Hazleton area, he could not say whether openings were available, that it would be more difficult to place plaintiff than it would be to place a vigorous eighteen year old man, and that he was not familiar with figures

showing the number of anthracosilicotic persons who have secured employment. There is nothing in the record to show that persons with conditions and background similar to plaintiff's are able to compete with persons of similar background who do not have those conditions. As stated by Judge Nealon in Serafin v. Celebrezze, M.D.Pa., December 30, 1965, No. 8839 Civil, "It must be remembered that claimant's ability to engage in substantial gainful activity is to be evaluated by his being able to compete with other applicants in an open employment market. * * *"

■ The evidence is insufficient to support the finding of the Social Security Administration. Merely citing catalogues (or other material) which list capsule descriptions of thousands of jobs available to prospective employees is not sufficient. Hanes v. Celebrezze, 4 Cir. 1964, 337 F.2d 209. In commenting on similar evidence in Stancavage v. Celebrezze, 3 Cir. 1963, 323 F.2d 373, the court stated:

"We recognize that the use of governmental and industrial studies such as the one referred to by the Appeals Council in the present case has been permitted without objection on occasion and approved of as warranting the Secretary's determination of what employment opportunities are available to a claimant. Having in mind the sincere, practical administration of the Act, however, we are not persuaded that such evidence moves far enough away from the realm of conjecture and theory when applied to the facts before us. It is too much akin to the employment Hodgson was supposed to be able to secure as an elevator operator. The suggestion that there is a list of '221 jobs that can be performed by persons with minimal education and that are sedentary in character or require only light exertion' is not very meaningful. There must be something more tangible establishing what employment opportunities there are for a man with his impairment. The

failure of the Secretary to establish the existence of that kind of genuine employment opportunity is patent. * * * " (Footnotes omitted.)

It is recognized that in Stancavage there was no testimony, as in this case, that the listed jobs exist in the plaintiff's area. This is immaterial because even if such jobs are found in the area, the essential inquiry, as stated by the court in Hodgson v. Celebrezze, 3 Cir. 1963, 312 F.2d 260, is "[A]ssuming that [plaintiff] has the physical ability, where is he to find such employment?" There must be a showing that the suggested occupations are ones in which "jobs are open to someone like [plaintiff]." "[W]hat employment opportunities are there for a man who can do only what [plaintiff] can do?" There must be a showing that there existed "a reasonable opportunity for [plaintiff] to engage in substantial gainful employment." See also Farley v. Celebrezze, 3 Cir. 1963, 315 F.2d 704. Stancavage v. Celebrezze, supra. In this connection, the court in Thomas v. Celebrezze, 4 Cir. 1964, 331 F.2d 541, stated:

> "Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant."

See also Ray v. Celebrezze, 4 Cir. 1965, 340 F.2d 556.

Viewing the record as a whole, the evidence falls short of showing genuine employment opportunities available to someone like plaintiff with his background and condition. See Massey v. Celebrezze, 6 Cir. 1965, 345 F.2d 146; Cyrus v. Celebrezze, 4 Cir. 1965, 341 F.2d 192; Frazier v. Celebrezze, E.D.S.C.1965, 236 F.Supp. 938; Riddle v. Celebrezze, W.D.S.C.1964, 235 F.Supp. 657; Goodwin v. Celebrezze, W.D.La.1965, 239 F. Supp. 487; and Hamlet v. Celebrezze, E.D.S.C.1965, 238 F.Supp. 676. It must be presumed that the best available proof on this has been presented. Stancavage v. Celebrezze, supra

The defendant's motion for summary judgment will be denied; the decision of the Secretary will be reversed, and judgment will be entered for the plaintiff.